UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number 1:21-cv-00507

Gary Wetter,
    Plaintiff,

v.

Trans Union, LLC,
Equifax Information Services, LLC,
Experian Information Solutions, Inc,
    Defendants.

---

## COMPLAINT
---

1. Plaintiff is an individual who resides in Denver, CO.

2. Defendant Experian Information Solutions, Inc ("Experian") is an Ohio corporation located at 475 Anton Boulevard, Costa Mesa, CA 92626.

3. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company located at 1550 Peachtree St Nw, Atlanta, GA 30309-2402.

4. Defendant Trans Union, LLC ("Trans Union") is a limited liability company, located at 555 W Adams St, Chicago, IL 60661.

5. This court has jurisdiction to hear this matter pursuant to 28 U.S.C. 1331 because this matter arises out of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681, et seq.

6. In March 2013, Plaintiff opened up a credit card with U.S. Bank.

7. Plaintiff fell on hard financial times and fell behind on payments.

8. Rather than file bankruptcy, Plaintiff attempted to settle his debt with U.S. Bank.

9. In March 2018, Plaintiff and U.S. Bank agreed to settle the debt for $3,448.79, which was to be paid in several monthly payments.

10. Plaintiff made all payments as required by the settlement agreement.

11. In or around November 2020, Plaintiff began looking into purchasing a home and went to a mortgage broker, who pulled his credit report.

12. On the report pulled by the mortgage lender, the U.S. Bank account was incorrectly reporting as being in a "charge off" status, with an outstanding balance, and did not reflect that the account had been paid in full pursuant to a settlement.

13. With the inaccurate U.S. Bank account information on Plaintiff's credit report, his credit score was a 636.

14. If the U.S. Bank account was reporting correctly, Plaintiff's credit score would be 679. This is significant because Plaintiff needs a credit score of 640 or higher to qualify for a down payment assistance program with EHousing Plus, and the inaccurate U.S. Bank account is preventing Plaintiff from being able to purchase a house, and to reap the benefits of home ownership.

15. Plaintiff disputed the inaccurate U.S. Bank account with the Defendants, and also sent them a copy of the settlement letter.

16. The Defendants notified U.S. Bank of Plaintiff's dispute by sending an ACDV form via the e-Oscar system, which essentially informs the data furnisher how the account is currently reporting, and requests that they perform an investigation into the accuracy of the data.

17. Although Defendants are required by law to perform their own re-investigation pursuant to 15 U.S.C. § 1681i, as a matter of practice, Defendants do not comply and simply parrot whatever response the data furnisher provides.

18. Defendants outsourced the handling of Plaintiff's disputes to the low wage operations center(s) overseas, where third party vendors are expected to crank out "reinvestigations" as

quickly as possible in a factory line assembly style, which consists of spending about 1-2 minutes per dispute, notifying the data furnisher of the dispute, and copying the data furnishers response.

19. Defendants blindly relied on U.S. Bank, even though U.S. Bank is not a reliable source of information because it has established a system of conducting phony investigations into credit disputes. Indeed, one former U.S. Bank employee who worked on investigating credit disputes for the bank testified that it was a very stressful job, and that U.S. Bank had given them a quota to perform at least 32-35 "investigations" into credit disputes per 8 hours, which would allow for about a maximum of 14 minutes per dispute (not including bathroom or lunch breaks).  If employees did not meet their daily quotas on "investigations", they were written up and not allowed to apply for other job positions at the bank, and if they did not meet their quotas often enough, they would eventually be terminated. U.S. Bank also set up a bonus incentive program where employees who processed more than 35 "investigations" into credit disputes, were given gift cards to Target and other incentives. At the end of each week, the ~ 400 employees who "investigated" credit disputes had their names and weekly numbers written up on a board, with recognition to those with the highest numbers, and those with the lowest numbers had their names written in red on the white board. Even when employees met their quotas, they would be pushed to do more on a daily basis during the morning huddles, such as a statement that you did 40 disputes yesterday, bet you could do 42 today.

## COUNT I, FAIR CREDIT REPORTING ACT (FCRA)

20. Plaintiff re-alleges and incorporates the above paragraphs as if fully set out herein.

21. Defendants negligently and willfully violated 15 U.S.C. § 1681i by failing to perform reasonable reinvestigations into Plaintiff's disputes, which included failing to review and

consider the information Plaintiff provided in connection with his disputes, failing to send all relevant information to the data furnisher, and blindly relying on U.S. Bank, a known unreliable source in the industry.

22. Defendants' violations of the FCRA have caused Plaintiff actual damages to be determined at trial, including loss of credit opportunity, harm to credit score, inconvenience, and non-economic damages.

WHEREFORE, Plaintiff prays for the following relief:

a. Actual damages to be determined at trial;

b. Punitive damages to be determined at trial;

c. Attorney Fees and costs if Plaintiff is the prevailing party at trial;

d. For such other relief as may be proper.

s/ Matthew R. Osborne
11178 Huron St., Ste 7
Northglenn, CO 80234
(303) 759-7018
matt@mrosbornelawpc.com

*Attorney for Plaintiff*

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**